UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Karen Seaworth,

                    Plaintiff,        Civ. Nos.    09-3437 (RHK/LIB)
                                                  09-3438 (RHK/LIB)
                                                  09-3440 (RHK/LIB)
v.                                                     09-3441 (RHK/LIB)

                                                     **MEMORANDUM OPINION**
William Messerli, *et al.*,                              **AND ORDER**

                    Defendants.

---

Karen Seaworth, Plaintiff *pro se*, East Grand Forks, Minnesota.

Derrick N. Weber, Amanda E. Prutzman, Messerli & Kramer, P.A., Plymouth, Minnesota, for Defendants.

---

## INTRODUCTION

These four actions arise out of debt-collection activities by the law firm Messerli & Kramer P.A. ("Messerli & Kramer") and several of its attorneys. Plaintiff Karen Seaworth alleges that Defendants[1] violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in several ways, and she commenced these actions seeking redress for those alleged violations. Presently before the Court are Seaworth's Motion for Summary Judgment and Defendants' Motion to Dismiss, for Judgment on the

---

[1] The named Defendants are William Messerli, Ross Kramer, and Jaime Hommerding in Case Nos. 09-3437 and 09-3438; and Messerli & Kramer, Ross Kramer, and Amanda Prutzman in Case Nos. 09-3440 and 09-3441. For ease of reference, the Court refers to the Defendants in each of the four actions collectively as "Defendants."

Pleadings, or for Summary Judgment in each of these actions. For the reasons set forth below, the Court will deny Seaworth's Motions and grant Defendants' Motions.

## BACKGROUND

The relevant facts are not in dispute. In 2005, Seaworth purchased a Ford vehicle, which she financed through Ford Motor Credit Company ("Ford"). She later defaulted on the payments and the vehicle was repossessed; a deficiency balance remained after the vehicle was sold. Ford then hired Messerli & Kramer to collect that balance.

In May 2008, Defendants mailed Seaworth a letter regarding the outstanding balance. She responded by letter dated June 2, 2008, disputing the debt and directing Defendants not to communicate with her further, lest she sue and/or contact the Federal Trade Commission and the Minnesota Bar Association. Ford (represented by Defendants) later sued Seaworth in Red Lake County, Minnesota District Court, seeking to collect the outstanding balance. Defendants personally served Seaworth with a Summons and Complaint at her then-residence in Red Lake Falls, Minnesota. In turn, she asserted various counterclaims against Ford, including claims under the FDCPA. She also purported to assert the same FDCPA "counterclaims" against *Defendants*, even though they were not parties to the state-court action. Of particular relevance here, she asserted that (1) Defendants did not verify her debt to Ford before continuing to collect it, in violation of 15 U.S.C. § 1692g(b), and (2) the Summons and Complaint "simulated" documents authorized, issued, or approved by a court, in violation of 15 U.S.C. § 1692e(9).

Defendants, on Ford's behalf, served a Reply to Seaworth's counterclaims by mailing a copy thereof to her home. However, her residence does not have a mail box, and the Reply was returned as undeliverable. Seaworth then filed a document styled as a "Notice to the Court," indicating that she had not received the Reply. Defendants then wrote the state-court judge, explaining that they had mailed the Reply to her last-known address and had re-mailed it to her post-office box, which Defendants had been able to locate through public records. Seaworth responded by filing a "Notice of Fraud upon the Court," asserting that Defendants knew the post-office box was her correct mailing address and had sent the Reply to her residence to "intentionally make things harder for [her] by possibly putting [her] in default for failure to defend."

Both parties later filed dispositive motions in the state-court action. After considering their arguments, the state court entered judgment for Ford on each of its claims and on Seaworth's counterclaims; it also approved Ford's request for attorneys' fees. Seaworth then filed a motion for reconsideration, disputing both the judgment and the amount of fees, which she argued were limited by her finance agreement with Ford. She also alleged that by seeking fees in excess of that permitted by the agreement, Defendants had violated 15 U.S.C. § 1692e(13). The motion was denied.

Seaworth subsequently filed the four cases *sub judice*, alleging four separate violations of the FDCPA. Those violations are as follows: (i) in case number 09-3437, she alleges that Defendants violated 15 U.S.C. § 1692g(b) by continuing collection of a disputed debt without first obtaining verification thereof; (ii) in case number 09-3438, she

alleges that Defendants violated 15 U.S.C. § 1692e(9) and (13) by serving her with a Summons and Complaint that falsely represented they were authorized, issued, or approved by a court of law; (iii) in case number 09-3440, she alleges that Defendants violated 15 U.S.C. § 1692e(2)(b) by seeking an unauthorized and excessive amount of attorneys' fees; and (iv) in case number 09-3441, she alleges that Defendants violated 15 U.S.C. § 1692c(a)(1) by mailing documents to "an unusual place" – her home – where they knew she had no mail box.

Seaworth now moves for summary judgment in each case. Defendants, in turn, have moved to dismiss and for judgment on the pleadings or, in the alternative, for summary judgment. They raise a host of arguments including improper service, issue/claim preclusion, bar by the statute of limitations, and failure on the merits. The Motions have been fully briefed and are ripe for disposition.

## STANDARD OF DECISION

Although Defendants have moved to dismiss and for judgment on the pleadings, they have moved in the alternative for summary judgment. Because Seaworth also has moved for summary judgment, the Court will treat the parties' Motions as cross-motions for summary judgment under Federal Rule of Civil Procedure 56.

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the

material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering Defendants' Motions, the Court views the record in the light most favorable to Seaworth, and when considering Seaworth's Motions, the Court views the record in the light most favorable to Defendants. Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002). "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Id.

## ANALYSIS

Defendants argue, *inter alia*, that Seaworth failed to properly serve her Complaints and that her claims are barred by the statute of limitations. There appears to be merit to these arguments. Nevertheless, the Court will grant Defendants' Motions for two

different reasons: two of Seaworth's claims are barred by collateral estoppel, and the remaining claims fail on the merits.

## I.     Collateral Estoppel

Collateral estoppel prevents a party from re-litigating issues that have already been adjudicated in a prior proceeding. For collateral estoppel to apply, each of the following elements must be met: (1) the new issue must be identical to one adjudicated in a prior case; (2) there must have been a final judgment on the merits in the prior case; (3) the estopped party must have been a party, or in privity with a party, to the prior case; and (4) the estopped party must have been given a full and fair opportunity to be heard on the adjudicated issue. E.g., Hauschildt v. Beckingham, 686 N.W.2d 829, 837 (Minn. 2004) (internal quotation marks and citations omitted).[2]

Here, Defendants argue that all of Seaworth's claims are collaterally estopped because she asserted them as counterclaims in the state-court action. The Court, however, concludes that only two claims are barred.

### A.     Section 1692g(b)

The Court has little trouble concluding that collateral estoppel bars Seaworth's claim under 15 U.S.C. § 1692g(b). In the state-court action, she asserted a counterclaim alleging that Ford had violated the statute by not verifying her debt before continuing collection. She makes the same allegation here, albeit against Defendants. (See Compl.

---

[2] The Court must apply Minnesota law to determine whether the instant claims are collaterally estopped by the state-court judgment. See, e.g., Minneapolis Cmty. Dev. Agency v. Buchanan, 268 F.3d 562, 566 (8th Cir. 2001); Haberer v. Woodbury Cnty., 188 F.3d 957, 961 (8th Cir.

in Civ. No. 09-3437.) Ford moved for summary judgment on this counterclaim, and Seaworth had the opportunity to both brief and argue it in state court. Ultimately, the issue was decided against her, on the merits. (See Weber Aff. Ex. 8 at 6.)[3] Hence, the issue here is identical to one adjudicated in the state-court action, Seaworth had an opportunity to litigate it, and the prior case resulted in a final judgment on the merits. Three of the four prerequisites for collateral estoppel, therefore, have been satisfied. And there can be no doubt that the final element – parties or privies – also has been met: while Defendants were not parties to the state-court action, it is beyond peradventure that they were in privity with Ford. See, e.g., Rucker v. Schmidt, 768 N.W.2d 408, 412-13 (Minn. Ct. App. 2009) (privity requires "a person so identified in interest with another that he represents the same legal right"; parties in privity include "those whose interests are represented by a party to the action"). Accordingly, the Court concludes that Seaworth is collaterally estopped from asserting her claim under 15 U.S.C. § 1692g(b).

Seaworth argues that Defendants "are retarded to think" she is "[re-]arguing the [state] court case" (Pl. Reply at 1), but that is precisely what she is doing. Her bone of contention is that the state court wrongly dismissed this claim and was "so blatantly one-

---

1999).

[3] Seaworth argues that Defendants have committed "fraud" and "lie[d]" to this Court by arguing that the state court addressed this claim on the merits. (See Pl. Mem. in Opp'n at 11 ("This is complete and intentional fraud by Defendants" because the state court "never applied the FDCPA to the [state] case.").) The record belies that assertion. (See Weber Aff. Ex. 8 at 6 ("The Defendant's counterclaims on the grounds of violations of the FDCPA are not supported by either the facts or the law. Despite the Defendant's argument that the Plaintiff failed to validate the debt as required by the FDCPA, the Plaintiff was not required to [do so] because the Defendant requested Plaintiff's counsel to stop communication.").)

sided, full of unfairness and bias against Plaintiff [that] even a blind man could tell it was a sham. The [state] court judge ignored all pertinent federal law, state law, and all court cases dealing with debt collection activities." (Id. at 2.) But even if that were true, her only remedy was to take an appeal to the Minnesota Court of Appeals. Her failure to avail herself of that remedy renders the issue foreclosed here. She cannot use this forum to obtain a second bite at the apple, notwithstanding any so-called state-court "bias" or error in ruling against her. See, e.g., Greene v. Hayward, No. 1:06-CV-0231, 2006 WL 1376879, at *6 (E.D. Cal. May 17, 2006) ("Plaintiff's claim that the judge's bias against him and in favor of Defendants [resulted] in a legally erroneous judgment is a *de facto* appeal like that rejected by the Supreme Court in the opinion which originated the Rooker-Feldman doctrine. Plaintiff's claim is barred.").[4]

### B. Section 1692e(2)(b)

Defendants requested attorneys' fees in their motion for summary judgment in the state-court action. Seaworth had the opportunity to dispute those fees in a responsive memorandum and at the summary-judgment hearing. The state-court judge granted Defendants' request. Seaworth then moved for reconsideration, arguing that the fees were limited under her contract with Ford. That motion was denied.

---

[4] The Rooker-Feldman doctrine "applies to cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). It precludes claims that would succeed "only to the extent that the state court wrongly decided the issues before it." Johnson v. City of Shorewood, 360 F.3d 810, 818 (8th Cir. 2004).

Seaworth now asserts, for a third time, that Defendants were not entitled to the fees they sought and that, by seeking "excessive" fees, they have violated 15 U.S.C. § 1692e(2)(b). (See Compl. in Civ. No. 09-3440.) The Court concludes that she had a "full and fair opportunity to be heard" and that there was a final judgment on the merits that adjudicated this issue. Furthermore, the Court concludes that Defendants were in privity with Ford vis-à-vis this issue in state court, for the reasons set forth above. Accordingly, the Court determines that her claim under 15 U.S.C. § 1692e(2)(b) is barred.

### C. The remaining claims

Seaworth raised two additional claims in state court that she again raises here: Defendants violated the FDCPA by (1) attempting to collect her debt at an unusual and inconvenient place, by mailing to her residence (instead of her post-office box) Ford's Reply to her counterclaims, and (2) sending her documents with the false impression they were authorized, issued, or approved by a court, because the Summons and Complaint contained an incorrect file number. Although she previously had the opportunity to litigate these issues, the state court's decisions (on summary judgment and on reconsideration) discuss neither. Therefore, this Court cannot conclude that these issues were "adjudicated" in state court, and hence it will not hold that they are collaterally estopped here. Instead, it will proceed to evaluate them on the merits.[5]

---

[5] This is not to say that collateral estoppel is *per se* inapplicable when a court fails to discuss an issue fully litigated before it. Indeed, "the operation of estoppel is not affected by the lack of findings in the prior proceeding." Fraser v. Broos, No. C4-93-549, 1993 WL 328771, at *2 (Minn. Ct. App. Aug. 31, 1993); accord, e.g., Parker v. MVBA Harvestore Sys., 491 N.W.2d 904, 906 (Minn. Ct. App. 1992). Nevertheless, a court must proceed "with caution" under such

## II. Fair Debt Collection Practices Act

"The FDCPA is designed to protect consumers from abusive debt collection practices and to protect ethical debt collectors from competitive disadvantage." Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1054 (8th Cir. 2002). It prohibits debt-collection practices that deceive, mislead, harass, oppress, or abuse consumers and "is a remedial strict liability statute . . . intended to be applied in a liberal manner." Picht v. Hawks, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999) (Noel, M.J.), aff'd, 236 F.3d 446 (8th Cir. 2001). "Proof of deception or actual damages is not necessary [for] recovery under the FDCPA." Id.

In evaluating a claim under the statute, the Court must employ an "unsophisticated consumer" standard. Peters, 277 F.3d at 1055; Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000). Under that standard, documents alleged to be false, misleading, or deceptive must be viewed through the eyes of an unsophisticated consumer. Id. This test is "designed to protect consumers of below average sophistication or intelligence," but also contains "an objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection notices." Id. (internal quotation marks and citations omitted).

Even when viewed through this generous lens, none of Seaworth's remaining claims passes muster.

---

circumstances, because issue preclusion "must rest upon a more solid basis than mere speculation as to what was actually adjudicated in the prior action." Id. (quoting Brooks Realty, Inc. v. Aetna Ins. Co., 128 N.W.2d 151, 154 (Minn. 1964)). For this reason, the Court believes

### A. Section 1692c(a)(1)

Section 1692c(a)(1) prohibits a debt collector from communicating with a consumer "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." Seaworth alleges that Defendants violated this statute and engaged in a "pettifogging shyster trick" when they mailed Ford's Reply to her Counterclaim to her residence, which does not have a mail box. (See Compl. in Civ. No. 09-3441; Pl. Mem. in Opp'n at 13.) She notes that Defendants had previously sent correspondence to her post-office box and not her home address and, hence, she asserts they must have been aware that she could not receive mail at her home. In the Court's view, this claim fails for two reasons.

First, the FDCPA prohibits a debt collector from *communicating* with a debtor at an unusual or inconvenient place. The term "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Here, Seaworth never received the Reply Defendants mailed to her residence. As a result, they cannot have "convey[ed]" any information to her through that mailing and, hence, it was not a "communication" under the statute. See American Heritage Dictionary 1326 (2d coll. ed. 1985) (defining "convey" as "to make known; impart"). Accordingly, it is not actionable. See Kropelnicki v. Siegel, 290 F.3d 118, 130 (2d Cir. 2002) (letter addressed only to

---

that the safer course is to resolve Seaworth's remaining claims on the merits.

plaintiff's daughter was not a "communication" even though plaintiff could have read the letter).[6]

Second, the statute prevents communications sent to *unusual* or *inconvenient* locations. The Court has unearthed no authority, and Seaworth has cited none, suggesting that a debtor's residence is an unusual location, regardless of whether it actually has a mail box, and the Court concludes that it is not. As for convenience, one could reasonably presume that Seaworth's home is a *more* convenient place to receive mail than a post-office box, assuming that the letter carrier had actually been successful in delivering mail there (perhaps by knocking on her door and handing it to her personally). By contrast, she would have had to travel to her post-office box to retrieve Defendants' Reply. Regardless, the statute only prohibits communications by a debt collector to locations "known or which should be known to be inconvenient." 15 U.S.C. § 1692c(a)(1). The fact that Defendants earlier sent mail to Seaworth's post-office box does not, in the Court's view, suggest that they *knew* or *should have known* she did not have a mail box at her home when they mailed the Reply. Absent evidence of such knowledge by Defendants, this claim must fail.

B.   **Section 1692e**

---

[6] The Court's analysis brings to mind the age-old question: if a tree falls in the forest and no one is there to hear it, does it make a sound? Similarly, if a letter is mailed to a consumer but the letter is never received, can it be an actionable "communication" under the FDCPA? The Court concludes that the answer is, "No."

In her final claim, Seaworth alleges that by serving the Summons and Complaint in the state-court action with an incorrect case number, Defendants violated 15 U.S.C. § 1692e. (See Compl. in Civ. No. 09-3438.) This claim also fails as a matter of law.

Seaworth first alleges that Defendants violated 15 U.S.C. § 1692e(13), which prohibits the "false representation or implication that documents are legal process." But the Summons and Complaint Defendants served on Seaworth were, in fact, "legal process"; they were the documents that commenced the state-court action, even with their incorrect case number. See Minn. R. Civ. P. 3.01(a) (civil action commenced "when the summons is served upon th[e] defendant"). The mere fact that these documents contained a typographical error does not transform them into either a "false representation" or a "false implication" that they were not true "legal process," even to an "unsophisticated" consumer. As such, the Court concludes that this claim cannot survive summary judgment. See Harper v. Collection Bureau of Walla Walla, Inc., No. C06-1605, 2007 WL 4287293, at *5-6 (W.D. Wash. Dec. 4, 2007) (no violation of Section 1692e(13) where defendant, rather than defendant's attorney, signed summons in underlying debt-collection action; "The summons was, in fact, a summons – it was not a simulation of a summons or a false representation of a summons – and it was served with a genuine Complaint.").

Seaworth next alleges that the Summons and Complaint violated 15 U.S.C. § 1692e(9), which prohibits the "use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by

- 13 -

any court . . . or which creates a false impression as to its source, authorization, or approval." Yet, the Summons and Complaint both contain – in large letters – a signature block with the heading "MESSERLI & KRAMER P.A.," followed by a list of attorneys. That list has a check mark next to the name of Jaime Hommerding, whose signature appears on the documents. The Summons also states at the bottom: "This communication *is from a debt collector* and is an attempt to collect a debt." (emphasis added). And, these documents were, in fact, filed in the state-court action. In the Court's view, there is absolutely nothing about the documents indicating, representing, or even remotely suggesting, even to an unsophisticated consumer, that they were "authorized, issued, or approved" by a court. By the same token, nothing about the documents falsely indicated their source or authenticity. Accordingly, this claim, too, fails as a matter of law. See Dorner v. Commercial Trade Bureau of Cal., No. CIV-F-08-0083, 2008 WL 1704137, at *4 (E.D. Cal. Apr. 10, 2008) ("[T]he few cases which address this provision generally limit findings of violations of § 1692e(9) to situations where the debt collector overtly impersonates a governmental agency, or where the debt collector attempts to hide its identity by using a fake alias.") (quoting Kuehn v. Cadle Co., No. 5:04-cv-432, 2007 WL 1064306, at *4 (M.D. Fla. Apr. 6, 2007)).

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** as follows:

1. Seaworth's Motions for Summary Judgment (Doc. No. 27 in Civ. No. 09-3437; Doc. No. 25 in Civ. No. 09-3438; Doc. No. 25 in Civ. No. 09-3440; Doc. No. 24 in Civ. No. 09-3441) are **DENIED**;

2. Defendants' Motions to Dismiss, for Judgment on the Pleadings, or for Summary Judgment (Doc. No. 33 in Civ. No. 09-3437; Doc. No. 30 in Civ. No. 09-3438; Doc. No. 30 in Civ. No. 09-3440; Doc. No. 29 in Civ. No. 09-3441) are **GRANTED**; and

3. Plaintiff's Complaints (Doc. No. 1 in Civ. No. 09-3437; Doc. No. 1 in Civ. No. 09-3438; Doc. No. 1 in Civ. No. 09-3440; Doc. No. 1 in Civ. No. 09-3441) are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 3, 2010
                                                  s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge